# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 1:13CR00006 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **ERNEST JULIUS BENKO,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; Larry W. Shelton, Federal Public Defender, Roanoke, Virginia, and Brian J. Beck, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

In this criminal case, the defendant has filed a Motion in Limine, to Compel Testimony and/or Alternative Relief, asking the court to facilitate the introduction during trial of an exculpatory statement made by a witness who stands on his Fifth Amendment right and refuses to testify for the defendant. For the reasons that follow, I will deny the motion.

I

The defendant, Ernest Julius Benko, has been charged in a six-count Superseding Indictment with making, or aiding and abiding in the making of, materially false statements in a matter within the jurisdiction of the executive

branch of the government, in violation of 18 U.S.C.A. § 1001(a)(2) (West 2000) (Counts One, Two, and Three); conspiracy to do so and to obstruct justice and commit perjury, in violation of 18 U.S.C.A. § 371 (West 2000) (Count Four); obstruction of justice, in violation of 18 U.S.C.A. § 1512(c) (West Supp. 2013) (Count Five); and perjury before the grand jury, in violation of 18 U.S.C.A. § 1623(a) (West 2000) (Count Six).

The basic facts upon which the motion rests are as follows.

The defendant was a notary public and court reporter employed by a reporting service in 2009. At that time, a local attorney, Robert Stuart Collins, was under investigation by a grand jury of this court for his involvement in the possession and distribution of controlled substances. Several of Collins' current and former clients were subpoenaed to testify before the grand jury. The government claims that Collins, aware of the investigation, solicited Benko's help in recording false sworn statements by two of these former clients (the "witnesses"). The government represents that Collins met with the witnesses to discuss the false testimony they would provide, and Benko then conducted the interviews and recorded the proceedings.

The government further alleges that Collins provided one of the witnesses with the name of the FBI agent who was investigating the case against him, specifically by holding up a sign with the agent's name during Benko's recording

of the interview, so as to solicit a false statement from the witness about the agent. Several months later, Benko himself was subpoenaed to testify before the grand jury and was asked about this interview. He denied having seen Collins hold up a sign with the agent's name during his recording of one of the witnesses' interview.[1] Count Six of the Superseding Indictment charges the defendant with making a false declaration to the grand jury based on this testimony.

Collins was subsequently indicted on twenty-two charges related to his drug activities, as well as his knowing solicitation of false statements from the witnesses. The separate but related charges against defendant Benko followed.

Collins recently pleaded guilty to four of the drug-related counts against him. He has entered into a plea agreement with the government that requires him to testify truthfully at his sentencing in order to receive credit under the U.S. Sentencing Guidelines for accepting responsibility for his conduct. (Def.'s Ex. 1, ECF No. 73-1 at 4); *see also* U.S. Sentencing Guidelines Manual § 3E1.1(a) (2012). The government has agreed that it will dismiss the eighteen remaining counts against Collins, but only after his sentencing, which has not yet occurred.

_____

[1] Specifically, the Superseding Indictment alleges that Benko falsely testified before the grand jury as follows:

Q: Did you ever see him write an answer down on a piece of paper and hold it up for the witness to see?

A: I never, I never saw him do anything like that.

(Superseding Indictment, ECF No. 55 at 9.)

(Def.'s Ex.1, ECF No. 73-1 at 3.)   The agreement further provides that "a significant variance above the guideline range" is appropriate in sentencing Collins in recognition of the charges that will be dismissed pursuant to the agreement, which would include his alleged solicitation of false statements from the witnesses. *Id.* Finally, in his plea agreement, Collins specifically reserved his right pursuant to the Fifth Amendment to refuse to testify at Benko's trial. *Id.* at 10.

Collins has made a statement that is relevant to defendant Benko's case. During plea negotiations, Collins' attorney informed an attorney for the government that, according to Collins, while he may have told one of the witnesses the name of the FBI agent, he did not hold up a sign with the agent's name during the interview. If Collins were to testify to this information during the defendant's trial, it would tend to refute the government's central accusation in Count Six.

The government informed the defendant of this statement, given its relevance and exculpatory nature, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). Defense counsel have represented to the court that Collins also made a similar statement in their presence. Collins has made clear, however, that if he is called to testify about this statement, he will assert his Fifth Amendment right in response to any question seeking information other than his name.[2]

---

[2] At the hearing on this motion, the parties stipulated that Collins would invoke the Fifth Amendment if called to testify, and that this invocation would satisfy the Fourth Circuit's doctrine governing assertions of the Fifth Amendment privilege. The

Benko argues that the Due Process Clause and the Compulsory Process Clause of the Constitution entitle him to present this exculpatory statement during his trial.[3] The defendant seeks a variety of forms of relief from the court. He first requests that the court require the government to grant immunity from prosecution to Collins regarding the content of the testimony he would provide. As an alternative, the defendant asks that the court require the government to stipulate to the content of Collins' statement, or accept some other substitute for Collins' testimony. Finally, should the court determine not to grant either of these requests, Benko argues that Collins' statement should be admitted under the statement against interest or the residual exceptions to the hearsay rule.

The government has responded, arguing that Benko has not shown that he is entitled to a court order requiring that Collins be granted immunity because he cannot demonstrate that the government has committed any misconduct in its handling of either his prosecution or that of Collins. The government further contends that Collins' statement was self-serving and is, therefore, not a statement against interest and lacks the indicia of reliability required when admitting this

availability of the Fifth Amendment privilege and the fact of Collins' invocation of that privilege, therefore, are not issues for the court's consideration.

[3] The Fifth Amendment provides, in relevant part, that no person "shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law." The Sixth Amendment provides, in relevant part, "In all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor."

type of hearsay evidence. For these reasons, the government argues that the exclusion of Collins' statement from Benko's trial would be consistent with the Consitution, as well as the Federal Rules of Evidence.

II

The defendant first argues that the government's refusal to either grant prosecutorial immunity to Collins or to accept some other substitute for his testimony violates the due process clause of the Fifth Amendment and the right to compel the testimony of witnesses provided by the Sixth Amendment. The defendant advances this argument primarily with reference to the Fourth Circuit's decision in *United States v. Moussaoui*, 365 F.3d 292 (4th Cir. 2004), which he claims represents a relaxation in the doctrine the court has historically applied in deciding whether to require the prosecution to grant immunity to a defense witness to facilitate that witness's testimony.

The defendant in *Moussaoui* faced charges of being a member of the conspiracy that carried out the attacks of September 11, 2001. *Id.* at 295-96. Citing national security concerns, the government refused to allow Moussaoui to interview a number of potential witnesses, most of whom were housed in the United States military prison at Guantanamo Bay, that he believed could provide exculpatory information. *Id.* at 296-97. The government, pointing to the court's

prior holdings that the judiciary has no independent ability to issue orders granting witnesses immunity from prosecution, argued that courts may be generally precluded from issuing orders that implicate the separation of powers. *Id.* at 302. The Fourth Circuit concluded, however, that the Fifth and Sixth Amendments required the government to give Moussaoui access to the potentially exculpatory statements of these prisoners. *Id.* at 312. The court emphasized that the government had committed no misconduct in its handling of the witnesses and Moussaoui's prosecution, but nonetheless concluded that Moussaoui had a right to obtain some form of statements from those individuals. *Id.* at 313. The court allowed that a modified form of access, other than depositions or formal testimony, could fulfill this constitutional requirement in light of the government's strong interest in promoting national security. *Id.* at 314-15.

The defendant in this case, however, misreads the import of the Fourth Circuit's decision. The *Moussaoui* court observed that the defendant could assert his right to compel the testimony of the witnesses precisely because none of those witnesses had asserted the privilege against self-incrimination. *Id.* at 303-04. Where, as here, the witness has asserted his Fifth Amendment right, the witness is removed from the "process power of the district court"; that is, the court can no longer compel that witness's testimony for purposes of the Sixth Amendment. *Id.* at 304. "[A] defendant has no Sixth Amendment right to the testimony of a

potential witness who has invoked the Fifth Amendment right against self-incrimination; therefore, the defendant has no Sixth Amendment right that could outweigh the Government's interest in using its immunity power sparingly." *Id.* Rather than softening the analysis a court should apply in determining whether to require the government to grant a defense witness immunity, the court in *Moussaoui* concluded that this reasoning was not applicable. The court reaffirmed its commitment to this doctrine the following year by applying it in *United States v. Washington*, 398 F.3d 306, 310-11 (4th Cir. 2005) (holding that the district court lacked the authority to compel the government to grant immunity to a defense witness where the defendant could not demonstrate any misconduct on the part of the prosecution).

The first step in the Fourth Circuit's doctrinal analysis is its holding that a district court does not have the authority to confer immunity on a witness *sua sponte*. *United States v. Klauber*, 611 F.2d 512, 517 (4th Cir. 1979). Congress has reserved this statutory power for the executive branch. *See* 18 U.S.C.A. § 6003(b) (West 2000) ("A United States attorney may, with the approval of the Attorney General . . . request an order [of immunity from the district court].").  A district court may, "in very limited circumstances" compel the government to grant immunity to a defense witness, but the defendant "bears a heavy burden" to demonstrate his need. *Washington*, 398 F.3d at 310 (internal quotation marks and

citations omitted). The Fourth Circuit requires the defendant to make a showing that (1) the government has engaged in "'prosecutorial misconduct or overreaching and (2) the proffered evidence would be material, exculpatory and unavailable from all other sources.'" *Id.* (quoting *United States v. Abbas*, 74 F.3d 506, 512 (4th Cir. 1996)).

In this case, the evidence the defendant seeks to introduce appears to satisfy the materiality prong of this test. The defendant is accused of lying about whether Collins held up the sign. Collins' denial of holding up the sign is both material and exculpatory, and no other witnesses appear available who would so testify.

What is missing from the defendant's request is the first prong. The defendant's motion makes no allegation of prosecutorial misconduct, which he must show in order to demonstrate that the court should order that Collins be granted immunity. The court in *Moussaoui* characterized this showing as necessary to overcome the government's interest in using its grant of immunity sparingly to pursue effective prosecutions. "Governmental abuse of the immunity power, however, vitiates this interest because when the Government's misconduct threatens to impair the defendant's right to a fair trial, it is proper for the district court to protect that right by compelling the Government to immunize the witness." *Moussaoui*, 365 F.3d at 304. In order to establish prosecutorial misconduct, a defendant must show that the government's "conduct prejudicially affected his

substantial rights so as to deprive him of a fair trial." *United States v. Scheetz*, 293 F.3d 175, 185 (4th Cir. 2002). The Fourth Circuit has stated, however, that the government's refusal to grant immunity where the witness was the subject of a criminal investigation did not amount to "prosecutorial misconduct or overreaching." *Mitchell*, 886 F.2d at 669-70 (internal quotation marks and citation omitted).

The investigation into Collins' misconduct long predates the statement at issue here. The government can hardly be accused of engineering or threatening criminal charges in order to force Collins' to plead the Fifth. During the hearing on this motion, the defendant, while admitting that he could make no claim of misconduct on the part of the government, argued that the plea agreement between Collins and the government effectively rendered Collins unavailable in these proceedings. The defendant specifically pointed to the provisions in the plea agreement warning Collins that any statements he made could be used against him at sentencing or in some other proceeding and preserving Collins' Fifth Amendment right if called to testify in Benko's trial. (Def.'s Ex. 1, ECF No. 73-1 at 9, 10.) The defendant contrasted these provisions with the clause requiring Collins to testify truthfully at his own sentencing in order to receive credit for accepting responsibility for his conduct. (Def.'s Ex. 1, ECF No. 73-1 at 4.) The defendant suggests that these provisions, allowing Collins to invoke the Fifth

Amendment in Benko's proceeding but requiring him to testify in his own, impose an unfair restriction on his ability to obtain testimony in his favor at trial.

This argument, however, does nothing to indicate any misconduct on the part of the government. Collins would have been no more likely to testify without invoking the Fifth Amendment had he not entered a plea agreement with the government, given that he already faced criminal charges involving the same conduct. Moreover, the terms of Collins' plea agreement were standard ones and did not represent any special attempt by the government to silence Collins.[4]

The type of prosecutorial misconduct this standard envisions is not present in this case and I cannot require the government to grant immunity to Collins to facilitate his testimony. *Cf. United States v. Morrison*, 535 F.2d 223, 225-26 (3d Cir. 1976) (finding prosecutorial misconduct where, over the course of a trial, the prosecution sent three messages to a witness to warn her that she was liable to be prosecuted on drug and perjury charges, as well as sent a fake subpoena to the witness to appear in the prosecutor's office, the only purpose of which "would therefore seem to have been to impress [the witness] with the force of the law with which she was entangling").

---

[4] Although the plea agreement's explicit reservation of Collins' Fifth Amendment privilege if called to testify during the defendant's trial may be unusual, the government's attorney represented during the hearing on this motion that this provision was included in the agreement at Collins' request. The government, therefore, is not responsible for its inclusion in the agreement such that it should be required to grant Collins immunity.

III

In addition to requesting an order granting immunity to Collins, the defendant asks in the alternative that the government be required to stipulate to Collins' testimony or accept some other form of his statement. The defendant again points to the *Moussaoui* case in support of this request. In *Moussaoui*, the court concluded that national security concerns foreclosed the defendant's ability to obtain formal deposition testimony from the witnesses housed in Guantanamo Bay. Moussaoui's Fifth and Sixth Amendment rights could still be protected, however, by the admission at trial of some alternative form of statements from these witnesses, so long as they were admitted at trial with appropriate explanatory instructions to the jury. *Moussaoui*, 365 F.3d at 314-15. The defendant suggests the same relief should be available to him.

This argument again ignores the fact, however, that the witness's invocation of the Fifth Amendment privilege against self-incrimination renders the court unable to compel his testimony, leaving the defendant with no Sixth Amendment right to that testimony. The extraordinary remedy the Fourth Circuit fashioned in *Moussaoui* was designed to facilitate the defendant's Sixth Amendment right to compel testimony while protecting the government's legitimate national security concerns. In this case, the witness's invocation of the Fifth Amendment has deprived the defendant of his Sixth Amendment right to Collins' testimony, and

there are no other overriding public policy concerns that would counsel an extraordinary remedy. Moreover, I can find no support for the proposition that, absent a showing of misconduct on the part of the government, a defendant is any more entitled to an order that the government stipulate to a witness's testimony than to an order that the government grant immunity to that witness. For these reasons, I find that requiring the government to stipulate to the content of Collins' statement would not be appropriate in this case.

IV

Alternatively, the defendant argues that Collins' statement should be admitted into evidence under one of the two exceptions to the general prohibition against hearsay evidence found in Federal Rule of Evidence 802. First, the defendant argues that Collins' statement was against his interest such that it satisfies the requirements of Federal Rule of Evidence 804(b)(3). The defendant further contends that the statement has such guarantees of trustworthiness and is so probative of a material fact that admitting it during his trial would best serve the interests of justice pursuant to Federal Rule of Evidence 807.

The defendant first contends that Collins' statement falls in the exception to the hearsay rule for statements against interest.[5] Fed. R. Evid. 804(b)(3). "A statement is admissible under this exception if: (1) the speaker is unavailable; (2) the statement is actually adverse to the speaker's penal interest; and (3) 'corroborating circumstances clearly indicate the trustworthiness of the statement.'" *United States v. Smith*, 383 F. App'x 355, 356-57 (4th Cir. 2010) (unpublished) (quoting *United States v. Bumpass*, 60 F.3d 1099, 1102 (4th Cir. 1995)). The party offering the statement bears the "formidable burden" of demonstrating that these requirements are met. *United States v. MacDonald*, 688 F.2d 224, 233 (4th Cir. 1982). In this case, the declarant has properly invoked a privilege that exempts him from testifying, making him unavailable for purposes of the rules. *See* Fed. R. Evid. 804(a)(1). It remains unclear, however, whether Collins' statement is actually adverse to his penal interest or whether the statement was made with sufficient corroborating circumstances.

The Supreme Court addressed the scope of when a statement is against the declarant's interest in its decision in *Williamson v. United States*, 512 U.S. 594

_____

[5] Federal Rule of Evidence 804(b)(3) defines a statement against interest as "A statement that (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency . . . to expose the declarant to civil or criminal liability; and (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability."

(1994).  The Court observed that the statement-against-interest exception is founded on "the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." *Id.* at 599.  The Court emphasized, however, that this rationale does not apply to statements that contain both self-inculpatory and self-exculpatory information.  "The fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts.  One of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature." *Id.* at 599-600.  According to the Court, "mere proximity to other, self-inculpatory, statements does not increase the plausibility of the self-exculpatory statements." *Id.* at 600.  Ultimately, whether a statement is truly "'self-inculpatory or not can only be determined by viewing [the statement] in context.'" *United States v. Udeozor*, 515 F.3d 260, 267 (4th Cir. 2008) (quoting *Williamson*, 512 U.S. at 603).

In this case, whether Collins' statement — in which he denied using a sign to give the name of an FBI agent to one of the witnesses during an interview — is self-inculpatory is unclear.  The defendant points out that the statement is against Collins' interest because it confirms his presence at and participation in the videotaping of the allegedly false statement.  The charges Collins faces that are

founded on this conduct have not yet been dismissed, and his statement could serve as evidence of relevant conduct that could be raised against him at sentencing. *See United States v. Tindle*, 808 F.2d 319, 324-35 (4th Cir. 1986) (concluding that a potential witness who had already pleaded guilty to his own charges but had not yet been sentenced could still legitimately fear incurring additional criminal liability and thus could assert the Fifth Amendment if subsequently called to testify in a separate case).

The government responds, however, that Collins' statement is self-serving, seeking to minimize his role in the criminal conduct surrounding the solicitation of false statements from witnesses. Although Collins' statement does not raise concerns about "attempts to shift blame" for criminal conduct to another co-defendant, *see Williamson*, 512 U.S. at 603, Collins still had motivation to lie. He appears to be minimizing his role, which may have been an attempt to curry more favorable treatment from the government in the process of negotiating his plea agreement. Moreover, Collins may have been motivated by a desire to protect an accomplice, the defendant here, from incurring additional criminal liability, which this statement arguably does at little risk to Collins' own circumstances.

The Supreme Court has stated that confessions or self-inculpatory statements "of arrested accomplices may be admissible if they are truly self-inculpatory, rather than merely attempts to shift blame or curry favor." *Id.* Under these

circumstances, I do not believe Collins' statement was "truly self-inculpatory." Although Collins confirms he was present at the time of the recording of the allegedly false sworn statement and he admits that he may have given the witness the name of the FBI agent, the total context of the statement evidences a goal of minimizing the criminal activity of both Collins and the defendant. This goal is inconsistent with the rationale for Rule 804(b)(3), which defines statements against interest to be reliable because they are unambiguously contrary to the declarant's penal or pecuniary interest. *See, e.g.*, *United States v. Maliszewski*, 161 F.3d 992, 1009 (6th Cir. 1998) ("from the perspective of the average, reasonable person, the statement must have been truly averse to the declarant's penal interest, considering when it was made") (internal quotation marks and citation omitted).

Even if Collins' statement were clearly counter to his interests for purposes of Rule 804(b)(3), I find that the statement lacks sufficient corroborating circumstances. Rule 804(b)(3)(B) requires that a statement against interest be supported by corroborating circumstances that clearly indicate its trustworthiness when it is offered in a criminal case as a statement "that tends to expose the declarant to criminal liability." "The requirement of corroborating circumstances was designed to protect against the possibility that a statement would be fabricated to exculpate the accused." *United States v. Brainard*, 690 F.2d 1117, 1124 (4th Cir. 1982). The court must make "a finding that the circumstances clearly indicate

that the statement was not fabricated." *Id.* The *Brainard* court looked to the advisory committee's note to Rule 804(b)(3) to further describe the purposes of the corroboration requirement: "'[O]ne senses in the decisions a distrust of evidence of confessions by third persons offered to exculpate the accused arising from suspicions of fabrication either of the fact of the making of the confession or in its contents, enhanced in either instance by the required unavailability of the declarant.'" *Id.* (quoting Fed. R. Evid. 804(b)(3)). Noting that the admission of hearsay statements deprives the opposing party of the ability to cross-examine the declarant, the *Bumpass* court warned that "[t]he level of corroboration . . . must be sufficient [so] that cross examination would add little to test the hearsay's reliability." 60 F.3d at 1102.

The Fourth Circuit has outlined six factors that courts should consider in assessing the external corroboration of a statement against interest:

> "(1) whether the declarant had at the time of making the statement pled guilty or was still exposed to prosecution for making the statement, (2) the declarant's motive in making the statement and whether there was a reason for the declarant to lie, (3) whether the declarant repeated the statement and did so consistently, (4) the party or parties to whom the statement was made, (5) the relationship of the declarant with the accused, and (6) the nature and strength of independent evidence relevant to the conduct in question."

*United States v. Lowe*, 65 F.3d 1137, 1146 (4th Cir. 1995) (quoting *Bumpass*, 60 F.3d at 1102).

The court in *Lowe* applied these factors in concluding that a statement offered by the defendant was not sufficiently corroborated. The court pointed out that no evidence corroborated the portion of the statement that was specifically exculpatory with regard to the defendant. 65 F.3d at 1146. The court further observed that the defendant and the declarant had a close relationship, giving the declarant a clear motive to lie. The court also found the statement unconvincing because it contradicted a crucial and uncontroverted fact in the case. Finally, the court concluded that cross-examination "would have undoubtedly tested the reliability of [the declarant's] statement." *Id.*

Many of the same factors are at issue here. The defendant and Collins are accused of working together to record false statements. Collins could have made this statement in an effort to minimize the criminal liability of an accomplice, who, it should be noted, became involved in the case in an effort to assist Collins in handling an investigation of Collins' involvement in other criminal conduct. In addition, the defendant can point to no corroborating evidence for the exculpatory portion of Collins' statement, in which he denied holding up the sign. Although Collins' presence at the interview is evidently corroborated by the testimony of other witnesses, Collins' characterization of his actions at that time is not. Most importantly, it is clear that cross-examination of Collins would assist in testing the reliability of the statement.

Several of the factors outlined in *Lowe* do weigh in favor of the defendant's assertion that the statement is sufficiently corroborated. At the time the statement was made, the declarant still faced the danger of penal consequences because the relevant charges against him have not yet been dismissed. It is also apparent that Collins made this statement more than once, including — through his attorney — to an attorney for the government. He made these statements, however, only twice and only after the investigation progressed over the course of three additional years. In weighing these factors, I conclude that the declarant's questionable motive and the absence of relevant independent supporting evidence renders Collins' statement fatally uncorroborated for the purposes of Rule 804(b)(3).

The defendant also argues that Collins' statement should be admitted under Federal Rule of Evidence 807, which allows for the admission of a hearsay statement, even if it is not covered by a specific exception, when necessary to serve the interests of justice.[6] The Fourth Circuit has "emphasized that the residual hearsay exception 'is a narrow exception that should not be construed broadly.'" *United States v. DeLeon*, 678 F.3d 317, 326-27 (4th Cir. 2012) (quoting *United*

---

[6] Specifically, Rule 807(a) allows for the admission of a hearsay statement, even if the statement is not covered by a specific exception, when: "(1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice."

*States v. Dunford*, 148 F.3d 385, 394 (4th Cir. 1998). A court, in determining whether a statement should be admitted under Rule 807 "must examine the totality of the circumstances that surround the making of [a proffered hearsay] statement for particularized guarantees of trustworthiness." *United States v. McHan*, 101 F.3d 1027, 1038 (4th Cir. 1996) (internal quotation marks and citations omitted).[7]

For the reasons I described in concluding that the statement lacked corroboration, I also find that Collins' statement lacks particularized guarantees of trustworthiness for the purposes of Rule 807. The declarant had some motivation to lie in making his statement. The defendant has not pointed to any evidence that can specifically corroborate Collins' denial of holding up the sign. Moreover, Collins made this statement after the investigation had progressed over more than four years and in the course of his plea negotiations with the government. He offered this statement, therefore, after calculating that it would be in his interest to do so. As the Fourth Circuit has stated, "[t]he issue . . . is whether . . . [the statement was] made under circumstances that guaranteed their trustworthiness such that cross-examination would have been of marginal utility in testing [its] accuracy." *United States v. Shaw*, 69 F.3d 1249, 1253 (4th Cir. 1995). I find that

---

[7] The court in *McHan* discusses what was then known as Federal Rule of Evidence 804(b)(5). Following this decision, Rule 804(b)(5) was recodified as Rule 807 with no change in meaning. *See United States v. Johnson*, 14 F. App'x 157, 159 n.1 (4th Cir. 2001) (unpublished) (citing *United States v. Bros. Constr. Co. of Ohio*, 219 F.3d 300, 309 n.2 (4th Cir. 2000)).

cross-examination would be useful in testing the accuracy of Collins' statement, and therefore conclude that it should not be admitted under Federal Rule of Evidence 807.


V

For the foregoing reasons, it is **ORDERED** that the defendant's Motion in Limine, to Compel Testimony and/or Alternative Relief (ECF No. 61) is DENIED.


ENTER:  June 7, 2013

/s/  James P. Jones
United States District Judge